110 P.3d 1200 (2005)
CITY OF PASCO, Respondent,
v.
Bernard N. SHAW and B. Jean Shaw, husband and wife and the marital community composed thereof, Appellants.
Columbia Basin Apartment Association, Robert Lee Gaines and Billie Jean Gaines, Manuela Vala, Maria Galeana, Defendants.
No. 22884-3-III.
Court of Appeals of Washington, Division 3, Panel One.
May 5, 2005.
*1202 Thomas A. Cowan, Lucinda J. Luke, Attorneys at Law, Richland, WA, for Appellants.
Leland B. Kerr, Paine, Hamblen, Coffin, Brooke & Miller LLP, Kennewick, WA, Laura Debacker McAloon, Attorney at Law, Spokane, WA, for Respondent.
William R. Maurer, Jeanette Motee Petersen, Charity Osborn, Seattle, WA, for Amicus Curiae.
BROWN, J.
¶1 Today we review the constitutionality of City of Pasco Ordinance 3231, requiring residential landlords to obtain a business license conditioned upon presenting an inspection certificate showing compliance with health and safety standards. The City successfully enforced its ordinance by summary judgments against appellant landlords, Bernard and Jean Shaw; intervenor tenants, Robert Lee and Billie Jean Gaines, Manuela Vala, and Maria Galeana; and intervenor landlord-manager corporation, Columbia Basin Apartment Association. We hold the ordinance is consistent with state and federal constitutional search and privacy principles, and is not unconstitutionally vague. Accordingly, we affirm the trial court's grant of summary judgment to the City and the summary dismissal of appellants' claims.

FACTS
¶ 2 In July 1997, acting on health and safety risks of tenants residing in potentially dangerous, substandard conditions, the City passed Ordinance 3231 regulating dwelling rental licenses. Effective January 1, 1998, the ordinance conditions residential landlord business licenses upon obtaining a certificate of inspection showing all dwelling units meet the City's Uniform Housing Code "and do not present conditions that endanger or impair the health or safety of a tenant[.]" PMC 5.78.020(a); Clerk's Papers (CP) at 296. Nine inclusive health and safety conditions are listed. The first eight conditions deal with structural strength, weather exposure, plumbing and sanitation, water, heating, electrical, exit, and fire risks. And the ninth condition concerns "violations of other applicable codes, rules, or regulations." PMC 5.78.020(a)(9); CP at 297.
¶ 3 The applicant receives "a provisional business license pending the timely submission of its initial certificate of inspection." PMC 5.78.020(b); CP at 297. Applicants must submit a certificate of inspection based upon physical inspections "not more than 90 days prior to the date of the certificate" by "(1) a City of Pasco Code Enforcement Officer, (2) the U.S. Department of Housing and Urban Development, (3) certified private inspectors approved by the City, (4) a Washington licensed structural engineer"; or "(5) a Washington licensed architect." PMC 5.78.020(c); CP at 297.
¶ 4 The Gaineses denied inspection (their landlords, Robert and Joan Lawrence, are not parties in this appeal). Mr. Vala and Ms. Galeana, the Shaws' tenants, also refused inspection of their individual dwelling unit, part of a multiplex. Three of the Shaws' buildings with four dwellings each failed inspection. Therefore, the City refused to renew the Shaws' provisional business license for 1999. In January 1999, the City sued for an injunction barring the Shaws from engaging in the rental business without a valid business license. In response, the Shaws pleaded Ordinance 3231 violated the state and federal constitutions. The Association and the tenants later intervened and countersued.
¶ 5 In February 1999, the appellants and the Lawrences filed a federal district court suit against the City for declaratory and injunctive relief under 42 U.S.C. § 1983. They alleged the City applied the ordinance *1203 unconstitutionally: (1) in requiring unreasonable searches and seizures; (2) because the ordinance is vague, thereby depriving plaintiffs of due process guaranteed by the Fourteenth Amendment to the U.S. Constitution; and (3) in requiring fee payments constituting illegal taxes (no longer an issue). The parties agreed to stay the state proceeding pending resolution of the federal suit.
¶ 6 In October 1999, the City successfully moved for summary judgment in the federal suit. The district court ruled the ordinance did not implicate the Fourth Amendment because the landlords, able to conduct private inspections, were not state actors. The Ninth Circuit vacated and remanded, holding the district court should have abstained from ruling on the matter until after the state action. Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 807 (9th Cir.2001).
¶ 7 Returning to state court, the parties filed cross-motions for summary judgment. The City first prevailed on the constitutional issues, then, in June 2003, the City received a stipulated summary judgment on the sole remaining issue, whether the Shaws should be enjoined from conducting their rental business because they lacked a business license. The parties consented to stay enforcement on agreed conditions until appeal of the constitutional issues. The Supreme Court transferred the appeal to this court.

ANALYSIS

A. Search and Privacy Contentions
¶ 8 The issue is whether the trial court erred in concluding Ordinance 3231 did not violate search or privacy principles established in the Fourth Amendment of the United States Constitution or article I, section 7 of the Washington Constitution and granting summary judgment dismissal of those claims.
¶ 9 We review constitutional issues de novo. Shoop v. Kittitas County, 149 Wash.2d 29, 33, 65 P.3d 1194 (2003). The Shaws contend Ordinance 3231 violates the state and federal constitutions because it authorizes an illegal search of the tenants' dwellings. Amicus Institute for Justice focuses its arguments solely within the privacy and home evasion context within the Washington Constitution.
¶ 10 The Fourth Amendment to the United States Constitution partly provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. For a search to fall within the proscription of the Fourth Amendment, the person "invoking its protection must claim state invasion of a justifiable, reasonable, or a legitimate expectation of privacy." State v. Crandall, 39 Wash.App. 849, 852, 697 P.2d 250 (1985).
¶ 11 Article I, section 7 privacy protections "are qualitatively different from, and in some cases broader than, those provided by the Fourth Amendment." City of Seattle v. McCready, 123 Wash.2d 260, 267, 868 P.2d 134 (1994) (McCready I) (citing State v. Gunwall, 106 Wash.2d 54, 65, 720 P.2d 808 (1986)). Both constitutions require some form of state action to invoke their protections. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); State v. Ludvik, 40 Wash.App. 257, 262, 698 P.2d 1064 (1985); 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 1.8 (3d ed.1996). Even so, action by law enforcement is not necessary to invoke the protections of article I, section 7. See State v. Vonhof, 51 Wash.App. 33, 37, 751 P.2d 1221 (1988) (tax appraiser action implicates article I, section 7); Camara v. Municipal Court, 387 U.S. 523, 530-32, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (warrant required for administrative inspections).
¶ 12 Since the City's ordinance requires a landlord to provide a certificate of inspection and does not authorize the City to search for code violations, the Shaws must prove governmental action by showing the landlord is a state actor. They fail because their authority concerns actions by a city building inspector and school officials, government employees acting within the scope of their employment. See McCready I, 123 Wash.2d at 265, 868 P.2d 134 (city building inspector); Kuehn v. Renton Sch. Dist. No. *1204 403, 103 Wash.2d 594, 602, 694 P.2d 1078 (1985) (school officials).
¶ 13 The Shaws incorrectly argue being required to hire a private inspector to inspect their rentals is like hiring a City agent to look for code violations. But to transform a private person into a state actor, the state must know of, and acquiesce in, an illegal private search, and the private party performing the search must do so to further a governmental rather than a private purpose. State v. Swenson, 104 Wash.App. 744, 754, 9 P.3d 933 (2000), review denied, 148 Wash.2d 1009, 62 P.3d 890 (2003).
¶ 14 A landlord has a private, albeit statutory, right to inspect the leased premises in order to discharge legal duties. See RCW 59.18.150(1) ("The tenant shall not unreasonably withhold consent to the landlord to enter a dwelling unit in order to inspect the premises."); RCW 59.18.060(1) (landlord has duty to maintain premises in compliance with all applicable codes, regulations, ordinances, and statutes). While landlords commonly retain contractual inspection rights, we deem the parties' contract relies on existing law. Caritas Servs., Inc. v. Dep't of Social & Health Servs., 123 Wash.2d 391, 405, 869 P.2d 28 (1994). In any event, the landlords' preexisting private inspection right is consonant with the ordinance's regulatory goals. The landlords allude to the increased cost of doing business and a property value threat, but this is not a takings case. The City's policy makers resolved the benefit and burden dilemma cast in the ordinance after public discourse, a legislative function not properly before us for judicial review.
¶ 15 Regarding the tenants' inspection refusal, the Residential Landlord-Tenant Act of 1973 (RLTA), gives the landlord premise inspection rights with at least two days notice that the tenant cannot unreasonably refuse. RCW 59.18.150(1). Upon unreasonable refusal, the tenant may be liable for up to $100 a day and can be assessed costs and attorney fees. RCW 59.18.150(5). While certainly another burden for the Shaws, they have the legal means to gain entry under RCW 59.18.150.
¶ 16 Turning to the tenants' privacy rights, as noted, under the RLTA tenants cannot unreasonably deny inspection access to landlords. While the tenants may possess a subjective expectation of privacy, the legislative policy reflected in the RLTA provides for such an intrusion. Thus, residential tenants logically hold no reasonable expectation of privacy in refusing the inspection. See McCready I, 123 Wash.2d at 270, 868 P.2d 134 ("The assessment of whether a cognizable privacy interest exists under Const. art. 1, § 7 is thus not merely an inquiry into a person's subjective expectation of privacy but is rather an examination of whether the expectation is one which a citizen of this state should be entitled to hold."). Therefore, when proper notice is given for entry by a landlord, a tenant has no reasonable expectation of privacy other than that entry for inspection will occur. Kalmas v. Wagner, 133 Wash.2d 210, 220, 943 P.2d 1369 (1997).
¶ 17 In sum, we hold the landlords acting directly or through their privately engaged inspectors are not state actors. And, the tenants' privacy rights are not offended.

B. Due Process Contentions
¶ 18 The next issue is whether the trial court erred in concluding Ordinance 3231 was not vague in violation of the due process clause of the Fourteen Amendment and granting summary judgment dismissal of that claim. Review remains de novo.
¶ 19 For landlords to receive a business license, the ordinance requires a certificate of inspection showing all dwelling units comply with the Uniform Housing Code (UHC) and no conditions exist endangering or impairing tenant health or safety, including:
(1) structural members that are insufficient in size or strength to carry imposed loads with safety;
(2) exposure of the occupants to the weather;
(3) plumbing and sanitation defects that directly expose the occupants to the risk of illness or injury;
(4) lack of water, including hot water;
(5) heating or ventilation systems that are not functional or are hazardous;

*1205 (6) defective, hazardous, or missing electrical wiring or electrical service;
(7) defective or inadequate exits that increase the risk of injury to occupants;
(8) violations that increase the risks of fire; or
(9) violations of other applicable codes, rules, or regulations.

PMC 5.78.020(a); CP at 50 (emphasis added). The Shaws challenge solely condition nine, arguing the language is vague by giving the inspector broad discretion to choose and arbitrarily apply unspecified inspection standards.
¶ 20 Duly adopted ordinances are presumed constitutional. City of Seattle v. Eze, 111 Wash.2d 22, 26, 759 P.2d 366 (1988). The party urging unconstitutional vagueness has the heavy burden of proving vagueness beyond a reasonable doubt. Id. An ordinance is void for vagueness if persons "of common intelligence must necessarily guess at its meaning and differ as to its application." Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739, 818 P.2d 1062 (1991) (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). But, the "vagueness test does not require a statute to meet impossible standards of specificity." Anderson v. City of Issaquah, 70 Wash.App. 64, 75, 851 P.2d 744 (1993). It is sufficient if the statute provides adequate notice of prohibited conduct and prevents arbitrary, discretionary enforcement. Haley, 117 Wash.2d at 739-40, 818 P.2d 1062.
¶ 21 Here, the challenged language is not so vague that it cannot be understood by an ordinary person. As part of an inclusive list of sample conditions endangering or impairing tenant health or safety, an inspector is guided in condition nine to look solely for conditions violating "applicable" codes, rules or regulations. PMC 5.78.020(a); CP at 50. Arbitrary, discretionary application is curbed by the standards set in such materials. For example, electrical violations referred to in condition six are normally controlled by a specific electrical code. Moreover, landlords, like other citizens, are presumed to know the law. Maynard Inv. Co. v. McCann, 77 Wash.2d 616, 624, 465 P.2d 657 (1970).
¶ 22 Because the vagueness challenge here does not raise First Amendment rights, our review is on an "as applied" basis, thus, we focus on the facts. Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); State v. Lee, 135 Wash.2d 369, 393, 957 P.2d 741 (1998). Appalling dwelling conditions are well supported by the record. For instance, the affidavit of Richard Ryan Mumma, Jr., Mr. Shaws' private inspector, noted conditions in dwelling units he inspected including mildew, improper venting, lack of heating (with specific UHC reference), exterior walls incapable of keeping out the weather, multiple plumbing deficiencies, insect infestation, broken sheet rock and unsound wall finishes, warped and buckling walls. For "Other Violations" Mr. Mumma listed water leaking into a hole behind a shower, a bucket used to catch water due to a missing sink trap, a failed ground fault circuit interrupter, and leaking kitchen plumbing. CP at 388. Based on his findings, Mr. Mumma "deemed substandard" the units he inspected under the UHC and PMC 5.78.020 and gave seven specific sub-section references to UHC 1001-2. CP at 392. Thus, fears of arbitrary inspection are unsubstantiated by the facts.
¶ 23 Given our analysis, we hold Ordinance 3231 is not unconstitutionally vague.
¶ 24 Affirmed.
WE CONCUR: KATO, C.J., and SWEENEY, J.