[No. 57361–1.   En Banc.   May 2, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD NELSON CANADY, *Petitioner.*

*Eric Broman* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Theresa L. Fricke, Senior Appellate Attorney,* for respondent.

*Catherine W. Smith* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for petitioner.

DOLLIVER, J.—Edward Canady, convicted of possession of marijuana with intent to manufacture or deliver, challenges the validity of the search warrant that led to his arrest. He asserts (1) the warrant was not supported by probable cause, and (2) the judge who issued the warrant lacked lawful authority to do so, because the department in which he sat was not properly created. These challenges were presented at every opportunity, starting with a pretrial motion to suppress. Canady was convicted on stipulated facts, and the Court of Appeals affirmed the conviction in an unpublished opinion. *State v. Canady,* noted at 57 Wn. App. 1064 (1990). We reverse Canady's conviction because the warrant was issued without authority of law. We therefore need not, and do not, reach the probable cause issue.

In July 1987, Seattle police officers applied for a warrant to search Canady's home for evidence of a marijuana growing operation. A search warrant was issued, the expected items were found, and Canady was arrested. At a pretrial motion to suppress, Canady asserted that (1) the affidavit for search warrant did not satisfy the veracity prong of the *Aguilar–Spinelli* test, and (2) for various reasons, the court department from which the warrant issued had no legal existence. The trial court denied the motion to suppress and found Canady guilty on stipulated facts. The stipulation expressly preserved Canady's right to appeal the pretrial decisions. The Court of Appeals affirmed, and we granted review.

The warrant in this case was issued by a pro tempore judge sitting in Department 4N of the Seattle Municipal Court. At that time, Department 4N was a night court, operating in the Department 4 courtroom, but handling

matters from various departments. In 1987, Department 4N had not been created "by ordinance" in accordance with RCW 35.20.020. Canady argues Department 4N was not validly created until August 1989, more than 2 years after his arrest, and therefore the warrant which led to his arrest was invalid.

Canady asserts that *In re Eng,* 113 Wn.2d 178, 776 P.2d 1336 (1989) resolved in his favor the question whether Department 4N was legitimate. We agree. The *Eng* decision involved a challenge to the validity of Departments 4, 5, and 7 of the Seattle Municipal Court, which were not properly created pursuant to the procedural requirements of the Seattle City Charter. Departments 4 and 5 were specifically mentioned in Seattle Municipal Code (SMC) 3.33-.040(A)(2), as the Seattle City Charter requires, *see Eng,* at 189–91, and therefore we held they "[we]re legitimate, albeit belatedly," because "adequate notice" of their creation existed. *Eng,* at 191. However, we added, "the same cannot be said for Department 7", *Eng,* at 191, because it was not mentioned in the Seattle Municipal Code.

▆ Department 4N was not explicitly at issue in the *Eng* case, but it is analogous to Department 7. In *Eng,* we stated:

> RCW 35.20.200 allows for the appointment of [pro tempore] judges "in the absence of" or "in addition to the regular judges". The word "judges" is central here: it has a different meaning than the word "departments." The City has used the judge pro tempore not in addition to the regular judges, but in addition to the regular *departments,* and in so doing allows him to function as a separate department. This is beyond the scope of RCW 35.20.200. The use of the word "departments" in RCW 35.20.100—in relation to the City's legislative body creating them—indicates that the Legislature was aware of the distinction between these two words.
>
> . . . Here, the City claims that Department 7 was not created at all. Nonetheless, it functioned as a department, complete with clerk, bailiff and other staff . . . To Mr. Eng and the other defendants passing through Department 7, the City's disclaimer regarding its act of creation makes little difference. Thus, although the City did not create the department properly, it held the department out to the public as a legitimate arm of its municipal court.

(Footnote omitted.) *Eng,* at 194. The foregoing discussion applies equally to Department 4N.

Indeed, at oral argument in the Court of Appeals, the State admitted that "Department 4N was analogous to Department 7 in the *Eng* case". In keeping with that comment, the Court of Appeals noted in its opinion that "[r]espondent concedes that Department 4N of the Seattle Municipal Court was not properly created." *State v. Canady,* slip op. at 7. Moreover, in response to the *Eng* decision, the Seattle Municipal Code was amended and *both Department 7 and Department 4N* were created. The amendment explicitly stated two new departments were necessary and that the amendment was in response to *Eng.* *See* Seattle City Ordinance 114655 (amending SMC 3.33-.040). These facts, in conjunction with the *Eng* decision, critically undermine the State's argument that Department 4N was not really a separate department and therefore did not need to be created independently.

In *Eng,* we "conclude[d] that the City can only appoint judges pro tempore to serve in an already validly created department under an elected judge. . . . Because Department 7's function is beyond the scope of the judge pro tempore statute, its actions are invalid." *Eng,* at 195. By the same reasoning, then, the actions of Department 4N were invalid—they lacked de jure authority.

Despite the foregoing, the lower courts found that the judge who issued the warrant had *de facto* authority over Canady. This issue was not decided in *Eng* because the defendant in *Eng* conceded that the court had de facto authority over him. *Eng,* at 195. Canady never conceded this issue; he has challenged it from the outset. The cases cited as controlling by the Court of Appeals, *State v. Smith,* 52 Wn. App. 27, 756 P.2d 1335 (1988) and *State v. Franks,* 7 Wn. App. 594, 501 P.2d 622 (1972), are not on point because those cases involved *invalid judges* rather than *invalid courts.* The appropriate rule here is that stated in *Higgins v. Salewsky,* 17 Wn. App. 207, 212, 562 P.2d 655 (1977):

Under a constitutional government such as ours, there can be no such thing as an *office de facto,* as distinguished from an *officer de facto.* Hence, the general rule that the acts of an officer de facto are valid has no application where the office itself does not exist. *Boyer v. Fowler,* 1 Wash. Terr. 101 (1860); 3 E. McQuillin, *The Law of Municipal Corporations* § 12.104 (3d ed. rev. 1973); *De jure office as condition of a de facto officer,* Annot., 99 A.L.R. 294 (1935).

In *State ex rel. Farmer v. Edmonds Mun. Court,* 27 Wn. App. 762, 768, 621 P.2d 171 (1980), *review denied,* 95 Wn.2d 1016 (1981), an exception to the general rule that "there must be a de jure office before there can be a de facto officer" was recognized: "Where the office is created by legislative act or municipal ordinance . . . the general rule yields and the office is regarded as a de facto office until the act or ordinance is declared invalid." This exception is inapplicable here, however, as no official attempt was made to "create" the "office" in question by act or by ordinance until August 1989. Unlike the Edmonds Municipal Court, Department 4N was *not* "created with apparent regularity pursuant to established law." *Edmonds,* at 769. Rather, it seems to have come into existence purely for the sake of convenience, with no basis in law at all. Therefore, the judge in this case had neither de jure nor de facto authority, and the warrant was invalid.

In its supplemental brief, the State urges us to adopt a "good faith" exception to the exclusionary rule and to hold such an exception cures any flaws in the validity of the warrant. Canady filed a motion to strike this portion of the State's argument. As he notes, the trial court entered no finding of fact that the police acted in good faith. Moreover, the issue was neither raised, briefed nor decided in the proceedings before the Court of Appeals.

It is unclear how the federal courts would resolve this issue. *See* 1 W. LaFave, *Search and Seizure* § 1.3, at 5–6 n.46.2 (Supp. 1991). The State cites three cases in support of a "good faith" exception: *United States v. Leon,* 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984); *Massachusetts v. Sheppard,* 468 U.S. 981, 82 L. Ed. 2d 737,

104 S. Ct. 3424 (1984); and *State v. Salazar,* 59 Wn. App. 202, 796 P.2d 773 (1990). However, those cases involved warrants that were not supported by sufficient and particularly established probable cause, not warrants issued by a court lacking jurisdiction. Although amicus curiae cites two state cases where the defect was jurisdictional rather than technical, *Commonwealth v. Shelton,* 766 S.W.2d 628, 629–30 (Ky. 1989) and *State v. Brady,* 130 Wis. 2d 443, 454–56, 388 N.W.2d 151 (1986) (Abrahamson, J., concurring), we believe an issue this critical deserves to be raised and thoroughly considered by the parties, both at trial and at the Court of Appeals. This was not done in this case. Because of the complexity and importance of the issue, which involves both Const. art. 1, § 7 and the Fourth Amendment, and because of the lack of thorough consideration of the issue by the trial court and the Court of Appeals, we decline to consider it. The motion to strike is granted.

The warrant was invalidly issued. The motion to exclude evidence obtained as a result of the warrant is granted. Defendant's conviction is vacated, and the charge against him is dismissed.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.