[Nos. 15323-8-II; 15324-6-II; Division Two. April 21, 1994.]
15325-4-II; 15326-2-II; 15327-1-II;
15328-9-II; 15329-7-II; 15330-1-II;
15331-9-II; 15677-6-II; 15678-4-II.

THE STATE OF WASHINGTON, *Appellant*, v. JAMES V. MOORE, ET AL, *Respondents*.

*In the Matter of the Personal Restraint of* DANIEL P. HUFF, *Petitioner*.

*In the Matter of the Personal Restraint of* NAOMI H. MORLEY, *Petitioner*.

---

*Arthur D. Curtis, Prosecuting Attorney for Clark County,* and *Richard Melnick, Deputy; Robert K. Leick, Prosecuting Attorney for Skamania County,* and *Grant E. Hansen, Deputy,* for appellant.

*Evan D. Hull* and *Boyd & Gaffney; Robert A. Lewis* and *Knapp, O'Dell & Lewis* (appointed counsel for appeal), for respondents.

*Darryl Gene Altman* and *Tamberlie D. Altman,* pro se.

SEINFELD, A.C.J. — The Skamania County District Court commissioner issued search warrants in each of the 11 criminal prosecutions consolidated in this appeal.[1] However,

---

[1] We have consolidated the State's appeal from the dismissal of nine separate criminal prosecutions with two personal restraint petitions in this appeal. After a jury found Respondent/Cross Appellant James Moore guilty, but before the trial court entered judgment, Moore moved for arrest of judgment and dismissal. Respondents Darryl Gene Altman, Tamberlie D. Altman, Carol Ann Vierra, Ira J. Conklin, Jr., Dawn K. Dickinson, David Creagan, Kenneth Ferdig, and

the Skamania County Superior Court determined that Skamania County had never properly created the office of district court commissioner. Consequently, it invalidated the search warrants, suppressed the evidence, and dismissed the prosecutions in the nine matters then before it. The State appeals the trial court's ruling. We affirm.

## FACTS

In early 1973, a statutorily defined "districting committee" for Skamania County recommended adoption of a district court system to the Skamania County Board of Commissioners (Board). In its written report, the committee did not recommend the authorization of district court commissioners, nor the appointment of any particular number of commissioners, nor locations for commissioners. Notes of committee proceedings indicate the committee did discuss the possible use of commissioners in outlying areas.

The Board adopted a district court system by resolution 1973-07. The resolution states that the Board considered the committee's recommendations and the testimony of its members. The resolution establishing the district court system does not authorize or even reference district court commissioners. Neither the committee nor the Board has taken further action to change or amend the district court plan. The Board did appropriate funds for district court commissioner services in 1974, and, by resolution, provided for a bond covering district court commissioners.

According to the testimony and affidavits of persons involved in creating the district court system, the districting committee *orally* recommended to the Board that it authorize commissioners but allow the district court judge to decide whether and how many commissioners to appoint

Dusty O. Spiering, all of whose trials were pending, joined Moore's motion to dismiss. After we consolidated the State's appeals in those nine cases, Daniel P. Huff and Naomi H. Morley filed motions in the trial court to vacate their judgments and sentences, based on the same grounds. The trial court transferred the motions to the Court of Appeals for consideration as personal restraint petitions pursuant to CrR 7.8(c)(2). We consolidated the Huff and Morley petitions with the nine appeals.

and where the commissioners would sit. Again, according to the testimony and affidavits of participants in the design of a district court plan, the Board intended to follow this recommendation when it adopted the district court plan. Neither the committee nor the Board reduced this plan to writing. Nor did the County maintain any official notes or records of the public hearings on the district court plan.

In 1982, the district court judge selected Karen Wyninger to serve as the appointed Skamania County District Court commissioner.[2] She also held the office of Skamania County Superior Court commissioner. In her capacity as Skamania County District Court commissioner, she issued search warrants in each of the cases consolidated in this appeal. Based on the evidence seized pursuant to the warrants, the prosecutor charged each Defendant with a violation of the controlled substances act. In each case, without the evidence seized, the State had insufficient evidence to prosecute.

At the hearings on Moore's motion to dismiss his conviction, Moore argued that the Board never properly created Wyninger's position and that, consequently, all warrants issued by her were invalid. The trial court agreed and suppressed all evidence seized pursuant to those warrants. It then granted the Defendants' motions for dismissal based upon the State's lack of admissible evidence of the charged crimes.

In this appeal, the State assigns error to the trial court's findings of fact 5 through 10, all of which relate to the creation of the district court commissioner position. It also claims that the trial court erred in failing to find that Wyninger had authority to issue the challenged search warrants because she was a superior court commissioner and because she was acting with de facto authority.

---

[2] In its orders transferring Petitioners Huff and Morley's motions to vacate, the trial court found that Wyninger's "training and qualifications for the position of District Court Commissioner consisted of her certification of completion [of the] qualifications for a lay judge issued October 29, 1982. She is not an attorney or qualified to practice law in the State of Washington". Finding of fact 4.

## STANDARD OF REVIEW

■■ We will uphold the trial court's findings of fact if they are supported by substantial evidence. *State v. Thetford*, 109 Wn.2d 392, 396, 745 P.2d 496 (1987). Evidence is substantial when it is sufficient "to persuade a fair-minded person of the truth of the stated premise". *Thetford*, 109 Wn.2d at 396. We then determine whether the findings support the conclusions of law. *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990). We review any issues of law de novo. *See State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991), *cert. denied*, 112 S. Ct. 1215 (1992).

## DISTRICT COURT CREATION

The Legislature determines the number, powers, duties, and jurisdiction of justices of the peace. Const. art. 4, § 10 (amend. 65). Justices of the peace are now referred to as district judges and justice courts are referred to as district courts. RCW 3.30.015. In 1961, the Legislature enacted the justice court act, RCW 3.30 through 3.74, allowing counties to substitute justice court districts for the preexisting justices of the peace. Laws of 1961, ch. 299; *State ex rel. Farmer v. Edmonds Mun. Court*, 27 Wn. App. 762, 763-64, 621 P.2d 171 (1980), *review denied*, 95 Wn.2d 1016 (1981). When Skamania created its district court, justice courts and justices of the peace were alternatively referred to as district courts and district judges. Former RCW 3.30.030 (Laws of 1971, ch. 73, § 1, p. 162). The law allowed the justices of the peace of a district to appoint justice court commissioners in any justice court district *"[w]hen so authorized by the justice court districting plan"*. (Italics ours.) Former RCW 3.42.010 (Laws of 1961, ch. 299, § 31, p. 2437).

In 1972-1973, when Skamania County was developing its district court plan, the law required a county wishing to adopt a district court system to appoint a districting committee. The districting committee had the responsibility to

prepare a plan for the districting of the county into one or more justice court districts . . . which plan shall include the following:

. . . .

(5) The number and location of justice court commissioners to be authorized, if any[.]

Former RCW 3.38.020 (Laws of 1965, 1st Ex. Sess., ch. 110, § 1, p. 2045). Under the statutes, the committee submitted the plan to the board of county commissioners; the board could adopt the plan as submitted, or modify, revise, or amend the plan. Former RCW 3.38.030 (Laws of 1965, 1st Ex. Sess., ch. 110, § 2, p. 2046).

### SKAMANIA COUNTY DISTRICT COURT COMMISSIONER

The State contends that the following trial court findings are not supported by substantial evidence: (1) the districting committee did not recommend the creation of commissioner positions; (2) the Board's resolution creating the district court did not create any commissioner positions; (3) the Board did not later appoint or authorize the judge to appoint a commissioner; (4) neither the committee nor the Board amended the district court plan to provide for a commissioner; and (5) the Board did not authorize Wyninger's appointment by amending the district court plan.

The State also challenges the trial court's legal conclusion that Skamania County failed to validly create the office of district court commissioner. However, the State does not challenge the trial court's conclusions of law (1) that a district court judge may appoint a commissioner only when authorized by the districting plan adopted by the Board, and (2) that the office of commissioner is created only if authorized by a districting plan, which must specify the number and location of any commissioners. Unchallenged conclusions of law become the law of the case. *State v. Slanaker*, 58 Wn. App. 161, 165, 791 P.2d 575, *review denied*, 115 Wn.2d 1031 (1990); *Millican of Wash., Inc. v. Wienker Carpet Serv., Inc.*, 44 Wn. App. 409, 413, 722 P.2d 861 (1986).

The State stipulated that neither the committee nor the Board amended the districting plan. The evidence in the record supports the stipulation. Nor does the record contain any indication that the Board expressly appointed or authorized appointment of a commissioner sometime after it established the district court system.

The trial court did find that the Board adopted the recommendations of the districting committee. Thus, the dispositive issue is whether the committee's recommendation, adopted by the Board, included the creation of the office of district court commissioner. In making its findings, the trial court concluded that Skamania County officials subjectively intended to create the commissioner position but failed to actually do so. Substantial evidence supports these findings. Nothing in the written records of Skamania County indicates that the committee recommended or that the Board created the office of district court commissioner. Further, the trial court's conclusion of law that the County did not validly create the office is supported by case law.

■ The law authorizing district courts is similar to the civil service commission law at issue in *Higgins v. Salewsky*, 17 Wn. App. 207, 211-12, 562 P.2d 655 (1977). In both instances, the statutes were not self-executing. To create a district court, former RCW 3.38.020 required counties to adopt specific plans containing statutorily mandated elements. When a county created a district court, it did not automatically create the office of district court commissioner. Former RCW 3.38.020 required that the district court plan provide for the number and location of commissioners, *if any*. The "if any" language clearly permits a county to select the number of court commissioner positions it wishes to have, *if* those positions were identified in the district court plan. In this case, neither the committee's plan nor the Board's adoption of that plan authorized district court commissioners.

The Washington State Supreme Court analyzed a similar statute in *In re Eng*, 113 Wn.2d 178, 189-91, 776 P.2d 1336 (1989). In *Eng*, a statute allowed Seattle's legislative body to create additional departments of the Seattle Municipal Court by specific legislative acts, not administrative or executive acts. 113 Wn.2d at 189. As with this case, no Seattle ordinance specifically created or established a seventh department of the municipal court. Seattle argued that it could establish additional departments without following any particular procedure, simply by an expression of the

will of its governing body. 113 Wn.2d at 190. Thus, Seattle argued, it "created" department 7 by including funds for its operation in the budget and by making appropriations for the additional judicial department. 113 Wn.2d at 190-93. The Supreme Court disagreed. It held that when a statute provides a particular procedure, a formless expression of will by the legislative body is not sufficient. The government must follow the required procedure. 113 Wn.2d at 191, 193.

Here, a statute required Skamania County to specify the number of commissioners it intended to authorize and the locations of commissioner courts. Former RCW 3.38.020. The County's appropriations of funds to pay commissioners and general intent to create the office of commissioner is insufficient under the statute and *Eng*.

Even were we to assume that the Board did adopt the committee's purported oral plan, this would not cure the deficiencies in the process. Even the purported oral plan failed to meet the statutory requirements. The statute required that the committee (and then the Board) specify both the number and location of commissioners it recommended. According to testimony, the committee and the Board intended to leave the number and location of commissioners to the discretion of the district court judge, within the limits of the Board's budgetary control. This purported "authorization" of commissioners does not comply with the statute. The County did not create the office of commissioner.

We note that there are sound policy reasons for requiring strict compliance with the statute. A district court commissioner may wield substantial authority. Yet the occupant of this office is not directly accountable to the county's residents. Wyninger's list of responsibilities included deciding bail or personal recognizance conditions of release, hearing contested traffic infraction and criminal cases along with nontraffic matters, and, of course, signing search warrants to support felony prosecutions. The commissioner is appointed by the district court judge and is not subject to election. RCW 3.42.010. A district court commissioner holds as much power as is delegated by the district court judge and, unlike a

superior court commissioner, the acts of a district court commissioner are *not* subject to revision by the district court judge. RCW 3.42.020; RCW 2.24.050.

The power of the office makes it essential that the County properly and publicly create and authorize it. Once created, the people of Skamania County have little influence over the office or its holder. If the Board could establish the office simply by adopting an oral district court plan known only to those present at the public hearing, it could impose judicial authority on the residents of Skamania County without notice. *See Eng*, 113 Wn.2d at 195 n.4. Not only would this deny county residents an opportunity to be heard on the use of district court commissioners, it would also frustrate the purpose of the Legislature.

█ As Skamania County never created the office of district court commissioner, the purported office lacked de jure authority. *State v. Canady*, 116 Wn.2d 853, 856-57, 809 P.2d 203 (1991). The warrants issued by the holder of a non-existent office are invalid, the evidence seized pursuant to those warrants must be suppressed, and the prosecutions dismissed or convictions vacated. *Canady*, 116 Wn.2d at 857-58.[3]

The trial court's findings of fact are supported by substantial evidence. Those findings support the conclusions of law.

### DE FACTO AND SUPERIOR COURT AUTHORITY

█ The State argues that Wyninger had de facto authority, citing to cases finding de facto authority in improperly appointed judges. However,

> [u]nder a constitutional government such as ours, there can be no such thing as an *office de facto*, as distinguished from an *officer de facto*. Hence, the general rule that the acts of an officer de facto are valid has no application where the office itself does not exist.

*Canady*, 116 Wn.2d at 857 (quoting *Higgins*, 17 Wn. App. at 212). "Generally, there must be a de jure office before there

---

[3]The *Canady* court left open the possibility of a good faith exception which could cure the warrant's invalidity. 116 Wn.2d at 857-58. The State did not below and does not now argue this potential exception, nor did it make a record to support it.

can be a de facto officer." *State ex rel. Farmer*, 27 Wn. App. at 768.

Canady discusses an exception to the general rule where the challenged office was created with apparent regularity by legislative act or municipal ordinance. In that situation, the office will be regarded as a de facto office until the authorizing act is declared invalid. *Canady*, 116 Wn.2d at 857; *State ex rel. Farmer*, 27 Wn. App. at 768. Here, as in *Canady*, there is no legislation creating the office. *Canady*, 116 Wn.2d at 857. Moore and the other Respondents attacked the authority of the office, not the officer; the County's de facto authority argument is inapplicable.

Wyninger was also the Skamania County Superior Court commissioner. The State argues that her superior court authority saved these warrants. However, the State stipulated that Wyninger issued the warrants in her capacity as a district court commissioner, and the record supports this conclusion. The trial court properly concluded Wyninger's superior court authority to be irrelevant to the issues here.

FORMER RCW 3.38.020 AND RCW 3.74.940

■ Skamania County also makes two arguments based on statute. Although it did not argue them below, all statutes which bear on the issues before the superior court are properly before this court. *Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990); *State v. Halsen*, 111 Wn.2d 121, 123, 757 P.2d 531 (1988).

First, the State contends that the justice court act was not applicable to Skamania County. The statute in effect at the time Skamania County created its district court required that a county of the "first, second, third, fourth, fifth, sixth, eighth or ninth class" develop a district court plan in order to implement the justice court act. Former RCW 3.38.020 (Laws of 1965, 1st Ex. Sess., ch. 110, § 1, p. 2045). The State notes that the statute omits seventh class counties from the list. It asserts that Skamania County was a seventh class county in 1973[4] and that Skamania County,

---

[4]There is nothing in the record indicating Skamania County's class status as of 1973.

therefore, could create its district court system and district court commissioners in any way it chose.

██ The reference to classes of counties in former RCW 3.38.020 appears to be a legislative attempt to reference former RCW 3.30.020 (Laws of 1961, ch. 299, § 2, p. 2426), which governed application of the justice court act. That statute provided that the act would be made applicable to any first through ninth (specifically including seventh) class county upon a majority vote of the county's board. Even if the omission of seventh class counties from the former RCW 3.38.020 is not construed as a typographical error, the former RCW 3.30.020 provision appears to extend the justice act provisions (including RCW 3.38.020) to Skamania County. Viewing the justice court act as a whole, it applied to Skamania County.

Further, were the Legislature to exclude seventh class counties from the authorizing statute, arguably the excluded counties would lack authority to create a district court. The Legislature has authority over district courts (justices of the peace) pursuant to article 4, sections 10 and 12 of the Washington Constitution. The Legislature prescribed a method by which counties could create district courts. It was the only such method.

The State also argues that the provisions of RCW 3.74.940 cure any procedural defects in the creation of the district court commissioner position. That statute, first enacted in 1965, declares legal and valid those justice courts that were created before legislative amendments to the justice court act. Laws of 1965, 1st Ex. Sess., ch. 110, § 4, p. 2047.[5]

██ We find the State's argument unpersuasive for several reasons. First, the deficiency here is not simply a minor

---

[5]In full, RCW 3.74.940 provides as follows:

"Any prior action by the legislative authority of any county with a population of less than two hundred ten thousand to make the provisions of chapters 3.30 through 3.74 RCW applicable to their county and the organization of any justice court as a result thereof, and all other things and proceedings done or taken by such county or by their respective officers acting under or in pursuance to such prior action and organization are hereby declared legal and valid and of full force and effect."

inconsistency between Skamania County's legislation and state statute. Rather, this case involves a failure to act with regard to district court commissioners. Second, an interpretation that would validate courts created in contravention of the requirements of the justice court act would, in effect, nullify those requirements (such as RCW 3.38.020) as of 1965. Nothing in RCW 3.74.940 allows us to overlook Skamania County's failure to create the commissioner position.

We affirm the trial court's rulings in the State's consoli-dated appeals. In its orders transferring the Huff and Morley motions to vacate to this court, the trial court found, in each case:

> insufficient evidence would remain to prosecute this case if all evidence resulting from the search based upon the warrant were suppressed.

The State has not challenged this finding. Therefore, we remand the personal restraint petitions of Huff[6] and Morley to the trial court for entry of orders vacating the judgment and sentence that was entered against Morley on January 25, 1990, and against Huff on September 28, 1989. In light of our decision affirming the dismissal of Moore's conviction, we need not address Moore's cross appeal of the guilty verdict in his case.

ALEXANDER and HOUGHTON, JJ., concur.

---

[6]Huff's lawyer has informed this court that he cannot locate Huff and that the Department of Corrections has placed Huff on "abscond status". If Huff is indeed avoiding the jurisdiction of this court, he has waived his right to pursue his petition. *See State v. Johnson*, 105 Wn.2d 92, 97, 711 P.2d 1017 (1986). In the absence of documentation regarding these allegations, we remand to the trial court for the determination of Huff's current status and such other further action the trial court deems appropriate. This may include allowing Huff a specified time in which to report to avoid dismissal of the petition. *State v. Rosales-Gonzales*, 59 Wn. App. 583, 585, 799 P.2d 756 (1990).