[No. 22808-4-II. Division Two. June 2, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. KEITH JEROME WALKER, *Appellant*.

*Pattie Mhoon*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *John C. Hillman, Deputy*, for respondent.

MORGAN, J. — The question in this appeal is whether a municipal court clerk can issue a warrant of arrest without judicial participation and without an authorizing provision of law. The answer is no.

On September 30, 1996, Walker was cited for consuming alcohol in a public park. He agreed in writing to appear within 15 days in the Tacoma Municipal Court. According to the trial court's later finding of fact, "[t]he municipal court computerized records do not reflect that [Walker] appeared in court."[1]

On November 7, 1996, a deputy clerk of the Municipal Court prepared a document titled "Administrative Warrant of Arrest."[2] The warrant stated:

> A complaint/information under oath or certification has been filed in this court, charging the defendant with the crimes hereon described.

> Therefore, in the name of the State of Washington, you are commanded to arrest the defendant and keep the defendant in custody until the defendant is discharged according to law [.][3]

The stated "reason for issuance" was "failure to pay fine or

---

[1] Finding 4 (Clerk's Papers at 124). None of the trial court's findings are challenged on appeal, and thus all are verities. *State v. Bustamante-Davila*, 138 Wn.2d 964, 983 P.2d 590 (1999); *State v. Broadaway*, 133 Wn.2d 118, 130, 942 P.2d 363 (1997).

[2] Clerk's Papers at 15.

[3] *Id.*

appear,"[4] even though failure to appear is not a crime.[5]

The clerk issued the "administrative warrant of arrest" without judicial participation. She did that by rubber-stamping a court commissioner's facsimile signature on the warrant's signature line. According to the superior court's later findings of fact,

6. The clerk reviewed a group of files at one time by calling up a list of files from the computer, [and] checking the files a batch at a time.

7. The clerk's office, particularly the warrant's [sic] clerk, processed this batch analysis and issued the . . . administrative warrant of arrest on November 7, 1996.

8. The warrant [was] issued by the warrant's [sic] officer after a check of the file.

9. There was no order signed by any municipal court judge authorizing the issuance of the warrant.

10. There was no order signed by any municipal court commissioner authorizing the issuance of a warrant.

11. There was no order authorizing the warrant clerk to attach the commissioner's signature.[6]

---

[4] *Id.*

[5] *See* former RCW 10.19.130 (repealed by LAWS OF 1994, ch. 271, § 701); Tacoma Municipal Code 8.11.010-.020.

[6] Because of this finding, the record is contrary to the dissent's assertion that a court commissioner "had verbally authorized" the issuance of a warrant for Walker. When the superior court held a pretrial hearing on whether the warrant had been lawfully issued, the only live witness was a deputy administrator of the Municipal Court. When the parties questioned him, neither demonstrated the existence of a court order, either written or oral. After the parties had questioned him, the superior court judge asked, sua sponte, whether a court commissioner might have "sign[ed] an order somewhere saying, I hereby grant authority to the Municipal Court Clerk's office to use a signature stamp in lieu of my signature on orders?" The deputy administrator responded, "Not to my knowledge." The judge then asked or stated, "He [an unnamed commissioner] just, to your knowledge, has verbally said it's okay to use a signature stamp." The administrator responded, "Yes." Report of Proceedings at 24. Assuming without holding that this one-word response was evidence of an oral court order, it was evidence that the superior court apparently found too uncertain to be credited; otherwise, the court would not have entered Finding 11. Compare Finding 10 (referring to the absence of a *written* court order) with Finding 11 (apparently referring to the absence of *any* court order).

12. There was no finding of probable cause by either a judge or a commissioner or clerk as to the failure to appear.

13. There is no order from the court to issue a bench warrant for the arrest of this defendant pursuant to CrRLJ 2.5.[7]

On November 14, 1996, police officers arrested Walker on the warrant. They lawfully searched his person and found cocaine. The next day, the State charged unlawful possession of a controlled substance.

On July 21, 1997, Walker moved to suppress the cocaine. He argued that "the warrant which was the basis for [his] arrest was invalid in that it was issued without any finding of probable cause by a neutral magistrate."[8] After a hearing, the superior court concluded that even though "[t]here exists no municipal court statute that explicitly grants a municipal court clerk . . . authority to issue administrative warrants or place signature stamps of court commissioners on the administrative warrant," "[t]he U.S. Supreme Court has endorsed the court's implicit power to issue administrative warrants when the underlying allegations are of criminal conduct."[9] The superior court denied the motion, and Walker later was convicted by a jury.

The issue on appeal is whether a clerk can order the issuance of a warrant of arrest without judicial participation. We consider (1) whether a warrant may issue only under "authority of law," (2) whether the clerk acted under "authority of law," and (3) whether suppression is the appropriate remedy.

## I

Wash. Const. art. I, § 7, provides that "no person shall be disturbed in his private affairs, or his home invaded, without authority of law." When served, a warrant of arrest disturbs a person in his private affairs. Thus, a warrant of

---

[7] Clerk's Papers at 124-25.

[8] *Id.* at 3.

[9] *Id.* at 125-26.

arrest shall not issue "without authority of law," regardless of whether it is labelled an "administrative" warrant, an "arrest" warrant, a "bench" warrant, or something else.[10]

The Supreme Court has applied this reasoning to search warrants. *City of Seattle v. McCready* (*McCready* I) holds that "in the absence of a specific authorizing statute or court rule," a court may not constitutionally issue an administrative search warrant on *less than* probable cause.[11] Likewise, *City of Seattle v. McCready* (*McCready* II) holds that in the absence of a specific authorizing statute or court rule, a court may not constitutionally issue an administrative search warrant *even with* probable cause, at least where the reason for issuance is a noncriminal housing code violation.[12]

In this case, the municipal court issued an arrest warrant with, we will assume, probable cause to believe Walker had failed to appear. Failure to appear is not a crime. Accordingly, the arrest warrant had to be based on a specific authorizing statute, court rule, or, we will assume, municipal ordinance.

## II

The next question is whether the clerk in this case acted under authority of law. We cannot find a Washington statute that authorizes a clerk, as opposed to a judge or court commissioner, to order the issuance of a warrant of arrest. Nor can we find a Tacoma ordinance to that effect. Neither party cites such a statute or ordinance, and neither party attacks the superior court's conclusion that no such

---

[10] *City of Seattle v. McCready* (*McCready* II), 124 Wn.2d 300, 309-10, 877 P.2d 686 (1994); *City of Seattle v. McCready* (*McCready* I), 123 Wn.2d 260, 271-72, 868 P.2d 134 (1994); *see City of Seattle v. McCready* (*McCready* III), 131 Wn.2d 266, 270, 931 P.2d 156 (1997). The State does not dispute this conclusion. It acknowledges in its brief that "a warrant must be issued pursuant to 'authority of law' as required by Article I, section 7 of the Washington Constitution," and that "a warrant issued without lawful authority is invalid." Resp't's Br. at 16.

[11] *City of Seattle v. McCready*, 123 Wn.2d 260, 268, 868 P.2d 134 (1994); *see also id.* at 270-72.

[12] *City of Seattle v. McCready*, 124 Wn.2d 300, 309-10, 877 P.2d 686 (1994); *see also McCready* III, 131 Wn.2d at 270, 272 (describing *McCready* I and II).

provision exists. Court rules are the only other source from which such authority might come.

■ The State relies on CrRLJ 2.5, which we construe in the same manner as a statute.[13] That rule provides:

> The court may order the issuance of a bench warrant for the arrest of any defendant who has failed to appear before the court, either in person or by a lawyer, in answer to a citation and notice, or an order of the court, upon which the defendant has promised in writing to appear, or of which the defendant has otherwise received notice to appear, if the sentence for the offense charged may include confinement in jail.

■ CrRLJ 2.5's first two words, "the court," are ambiguous. According to the State, those words mean the entire institution, which includes its clerks. According to Walker, those words mean the judge or court commissioner only. Since either meaning is plausible, we look for indications of intent.[14]

■ Walker argues that CrRLJ 2.5 should be read in light of other, closely related rules; that CrRLJ 2.2 is such a rule; and that CrRLJ 2.2 shows the words "the court" were intended to mean the judge or court commissioner only. When two closely related rules use the same word or words, it is reasonable to think that the same meaning was intended.[15] CrRLJ 2.5 and CrRLJ 2.2 are closely related, for each deals with the issuance of arrest warrants. CrRLJ 2.2 clearly uses the words "the court" to mean the judge or

---

[13] *State v. Greenwood*, 120 Wn.2d 585, 592, 845 P.2d 971 (1993) ("When interpreting court rules, the court approaches the rules as though they had been drafted by the Legislature.") (citing *State v. McIntyre*, 92 Wn.2d 620, 622, 600 P.2d 1009 (1979); *State v. Whelchel*, 97 Wn. App. 813, 817, 988 P.2d 20 (1999) (rules of statutory construction apply to court rules also)).

[14] *Morgan v. Johnson*, 137 Wn.2d 887, 892, 976 P.2d 619 (1999); *State v. Fast*, 90 Wn. App. 952, 955, 954 P.2d 954, *review denied*, 136 Wn.2d 1023, 969 P.2d 1065 (1998).

[15] *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 313, 884 P.2d 920 (1994) ("When the same words are used in different parts of the same statute, it is presumed that the Legislature intended that the words have the same meaning."); *State v. Keller*, 98 Wn. App. 381, 384, 990 P.2d 423 (1999) ("When the same words are used in related statutes, we must presume that the Legislature intended the words to have the same meaning.").

court commissioner as opposed to, and not including, clerks. It provides:

> **(a) Issuance of Warrant of Arrest.** If a complaint is filed and if the offense charged may be tried in the jurisdiction in which the warrant issues, and if the sentence for the offense charged may include confinement in jail, *the court may direct the clerk* to issue a warrant for the arrest of the defendant . . . .
>
> **(b) Issuance of Summons in Lieu of Warrant.**
>
> (1) *Generally.* If a complaint is filed, *the court may direct the clerk* to issue a summons . . . .
>
> (2) *When Summons Must Issue.* If the complaint charges the commission of a misdemeanor or a gross misdemeanor, *the court shall direct the clerk* to issue a summons [unless the court finds facts not pertinent here].
>
> (3) *Summons for Felony Complaint.* If the complaint charges the commission of a felony, *the court may direct the clerk* to issue a summons [unless the court finds facts not pertinent here].[16]

CrRLJ 2.2.

It would be incongruous to give the same words, "the court," one meaning in one arrest warrant rule, and a markedly different meaning in another arrest warrant rule. If different meanings had been intended, different words would have been used.[17] Accordingly, it appears that the words "the court" were intended mean the judge or court commissioner.

In addition to CrRLJ 2.2, we find several other indications of intent. The first is the wording of CrRLJ 2.5 itself. It provides that "[t]*he court may order* the issuance of a bench warrant . . . ." (Emphasis added.) Although the court *as an institution* may *issue* a warrant, the court *as a person* must *order* the issuance of a warrant. On its face, then, CrRLJ 2.5 manifests that "the court" is the judge or court commissioner, not the entire institution.

---

[16] (Emphasis added.)

[17] For example, the Supreme Court would have said "the judge" in CrRLJ 2.2 and "the court" in CrRLJ 2.5.

■ A second indication of intent is Washington's legal history. No Washington state statute has ever authorized clerks to order the issuance of arrest warrants without judicial oversight.[18] Nor did any Washington territorial statute, with one exception.[19] If CrRLJ 2.5 were intended to alter this long history, it surely would say so in language more explicit than that which it now uses.

■ A third indication of intent is the uncertainty that would result if "the court" were taken to mean the court as an institution, as opposed to the court as judge or commissioner. Would the court's bailiff be authorized to order the issuance of a warrant? The judge's secretary? If CrRLJ 2.5 were intended to authorize court employees other than a judge or a commissioner to order the issuance of arrest warrants, it would specify which employees.

---

[18] RCW 2.20.010 ("magistrate is an officer having power to issue a warrant for the arrest of a person charged with the commission of a crime"); RCW 2.20.020 ("following persons are magistrates: (1) The justices of the supreme court. (2) The judges of the court of appeals. (3) The superior judges, and district judges. (4) All municipal officers authorized to exercise the powers and perform the duties of district judges."). *See also* REM. REV. STAT. § 50 ("magistrate is an officer having power to issue a warrant for the arrest of a person charged with the commission of a crime"); REM. REV. STAT. § 51 ("following persons are magistrates: 1. The justices of the supreme court; 2. The superior judges, and justices of the peace; 3. All municipal officers authorized to exercise the powers and perform the duties of a justice of the peace"); 2 HILL'S CODE OF PROC. ch. 4, § 30, ("magistrate is an officer having power to issue a warrant for the arrest of a person charged with the commission of a crime"); 2 HILL'S CODE OF PROC. ch. 4, § 31, ("following persons are magistrates: 1. The justices of the supreme court; 2. The superior judges, and justices of the peace; 3. All municipal officers authorized to exercise the powers and perform the duties of a justice of the peace"). *Cf.* LAWS OF 1987, ch. 202, § 103 (substituting "district judges" for "justices of the peace"); LAWS OF 1971, ch. 81, § 9 (adding "the judges of the court of appeals" to the definition of "magistrate").

[19] CODE OF 1881, § 1026 ("[w]hen an indictment is found, *the court* may direct the clerk to issue a warrant, returnable forthwith; if no order is made, *the clerk* must issue a warrant upon all indictments within ten days after the close of the term") (emphasis added) (repealed by LAWS OF 1984, ch. 76, § 25); CODE OF 1869 § 113 ("No person shall be arrested or held to bail in any civil action, *except upon the order of the court* where the action is brought, *or a judge of the Supreme Court*") (emphasis added); CODE OF 1863 § 87 ("No person shall be arrested or held to bail in any action *except upon the order of the court* where the action is brought, *or a judge of the supreme court*") (emphasis added); CODE OF 1855 § 32 ("A *justice of the peace shall issue a warrant of arrest* in . . . cases within his jurisdiction") (emphasis added); CODE OF 1855 § 78 ("No person shall be arrested or held to bail in any civil action *except upon the order of the court* where the action is brought, *or a judge of the supreme court*") (emphasis added).

■■ A fourth indication of intent is the importance of a judicial officer checking the work of the clerk who prepares warrants of arrest, and the relative ease with which a judicial officer can do that. The issuance of an arrest warrant is a serious matter both to the person it names and to the police who must serve it, even when the warrant is labelled "administrative." The work of the clerk who prepares a proposed warrant can be checked and approved in only a moment or two by a judge or court commissioner. If CrRLJ 2.5 were intended to dispense with this significant and final safeguard, it would explicitly say so. Based on these indications of intent, we conclude that CrRLJ 2.5 uses the words "the court" to mean the judge or court commissioner.

■ This result is consistent with *State v. Rice*,[20] a case relied on by the State. The *Rice* court relied on the principle that "if the legislative intent or meaning of a statute is unclear, the meaning of doubtful words may be determined through their relationship to associated words and phrases."[21] The *Rice* court applied this principle by construing a former jury statute (RCW 2.36.100) in light of two closely related statutes (RCW 2.36.095 and RCW 2.36.110) that indicated the words "the court" were intended to include clerks. We apply the same principle by construing CrRLJ 2.5 in light of CrRLJ 2.2; the latter rule indicates, as already discussed, that the words "the court" were *not* intended to include clerks.

■ Although the Fourth Amendment is argued by both parties, it has nothing to do with our decision. It restricts state action,[22] but it does not authorize state action in the first instance.[23] As a consequence, it cannot provide the

---

[20] *State v. Rice*, 120 Wn.2d 549, 560-61, 844 P.2d 416 (1993).

[21] *Id.*, 120 Wn.2d at 560-61.

[22] *Mapp v. Ohio*, 367 U.S. 643, 654, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 84 A.L.R.2d 933 (1961); *Wolf v. Colorado*, 338 U.S. 25, 27-28, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643 (1961).

[23] *E.g.*, *California v. Superior Court*, 482 U.S. 400, 405, 107 S. Ct. 2433, 96 L. Ed. 2d 332 (1987) ("Federal Constitution places certain limits on the sovereign

"authority of law" required by article I, section 7.

 We do not hold that article I, section 7 precludes the state or even a city from adopting a statute, court rule, or ordinance that authorizes clerks to order the issuance of warrants of arrest.[24] We have no occasion to address that question, because there is no authorizing statute, court rule or ordinance in this case. We hold only that a clerk may not order the issuance of a warrant of arrest *in the absence* of an authorizing statute, court rule or ordinance.

## III

 The last question is whether the foregoing violation of article I, section 7, should be remedied by applying the exclusionary rule. As the State correctly points out, the United States Supreme Court would say no because of limitations it has placed on the exclusionary rule as a Fourth Amendment remedy.[25] The question here, however, is not the remedy for a Fourth Amendment violation, but rather the remedy for a violation of article I, section 7. To date, the Washington Supreme Court has remedied all violations of article I, section 7, by applying the exclusion-

---

powers of the States"); *Pineman v. Oechslin*, 494 F. Supp. 525, 554 (D. Conn. 1980) (state may not "transgress the limitations on state power . . . which are embodied in the United States Constitution"), *vacated on other grounds* 637 F.2d 601 (2d Cir. 1981); RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 3.1 at 337 (3d ed. 1999) ("Federal courts test only whether a state act violates some specific check on state power contained in the federal constitution.").

[24] *Compare Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S. Ct. 2119, 32 L. Ed. 2d 783 (1972) (holding that the Fourth Amendment does not preclude a city from taking such action).

[25] *Arizona v. Evans*, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995) (exclusionary rule does not apply to acts of court clerk); *Illinois v. Krull*, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987) (exclusionary rule does not apply to acts of legislature); *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) (exclusionary rule does not apply when police rely in good faith on facially valid warrant issued in violation of Fourth Amendment); *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984) (same); *State v. Werner*, 79 Wn. App. 872, 883-84, 906 P.2d 342 (1995), *reversed on other grounds*, 129 Wn.2d 485, 918 P.2d 916 (1996).

ary rule.[26] Indeed, it has declined even to consider limitations parallel to the federal ones[27] when, as here, the State has not raised the issue at the trial court level.[28] Accordingly, we conclude that the exclusionary rule applies here.

Reversed.

ARMSTRONG, C.J., concurs.

HUNT, J. (dissenting) — I respectfully dissent. I disagree with the majority's characterization of this case as involving a municipal court clerk's issuance of a warrant of arrest "without judicial participation." Here, the record is uncontroverted that although the court commissioner had signed no *written* order granting the court warrant clerk authority to use the commissioner's stamp on FTA (Failure to Appear) warrants, the commissioner had verbally authorized this procedure for issuing arrest warrants 30 days after FTA's for jailable offenses where the defendant had not paid a fine or otherwise responded in the interim.

I would also address the State's argument on appeal that the arresting officers were entitled to "good faith" reliance on this warrant. Because the court below upheld the arrest warrant as legally issued, the State had no need to raise

---

[26] *State v. Ladson*, 138 Wn.2d 343, 359, 979 P.2d 833 (1999); *State v. Hendrickson*, 129 Wn.2d 61, 76, 917 P.2d 563 (1996); *State v. Boland*, 115 Wn.2d 571, 582-83, 800 P.2d 1112 (1990); *State v. Chrisman*, 100 Wn.2d 814, 819, 676 P.2d 419 (1984); *State v. White*, 97 Wn.2d 92, 111-12, 640 P.2d 1061(1982); *State v. Gunkel*, 188 Wash. 528, 534, 63 P.2d 376 (1936); *State v. Raum*, 172 Wash. 680, 686-87, 21 P.2d 291 (1933); *State v. Gibbons*, 118 Wash. 171, 188-89, 203 P. 390 (1922); *State v. Johnson*, 75 Wn. App. 692, 709, 879 P.2d 984 (1994), *review denied*, 126 Wn.2d 1004 (1995); *State v. Crawley*, 61 Wn. App. 29, 34-35, 808 P.2d 773, *review denied*, 117 Wn.2d 1009, 816 P.2d 1223 (1991).

[27] *State v. Riley*, 121 Wn.2d 22, 30, 846 P.2d 1365 (1993); *State v. Canady*, 116 Wn.2d 853, 857-58, 809 P.2d 203 (1991); *State v. Huft*, 106 Wn.2d 206, 212, 720 P.2d 838 (1986).

[28] *Riley*, 121 Wn.2d at 30; *Canady*, 116 Wn.2d at 857-58. We are unimpressed by the dissent's claim that the State did not need to raise good faith in the trial court "because the trial court upheld the warrant." This claim is inconsistent with *Riley*, in which the trial court also upheld the warrant. The claim also overlooks the idea that a party's duty to raise issues is fulfilled or not fulfilled *before*, not after, the trial court rules.

and to brief this argument until Walker filed his appeal. I would affirm.

Review denied at 142 Wn.2d 1013 (2000).